**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Richard W. SUTER,**
**Defendant-Appellant.**

**No. 84–1198.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 20, 1984.

Decided Jan. 17, 1985.

Rehearing and Rehearing In Banc
Denied Feb. 14, 1985.

Daniel C. Murray, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Gordon James Arnett, Chicago, Ill., for defendant-appellant.

Before BAUER, WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Richard W. Suter was convicted in the United States District Court for the Northern District of Illinois of mail fraud and was sentenced to a term of imprisonment of one year, followed by five years probation, conditioned upon, among other things, his payment of restitution in the amount of $67,800. Suter appeals. We affirm the district court's judgment of conviction and sentence.

On August 10, 1982, Richard W. Suter was charged in a 23-count indictment alleging mail fraud. 18 U.S.C. § 1341. In essence, the indictment charged that Suter had engaged in a fraudulent scheme to obtain monies through the mails from individuals wishing to acquire rare coins. Through advertisements which ran in a newsletter he published, Suter offered his services as a broker, stating that upon receipt of a pre-paid order, he would purchase coins and ship them to the customer. However, in many instances, Suter would either fail to provide coins or refunds to customers, sending them letters containing false representations as to why their orders had not been filled, or refunds returned, in order to retain their money. Pursuant to a written plea agreement entered into with the government, Suter agreed to plead guilty to Counts 3 and 15 of the indictment in return for the government's promise to dismiss the remaining counts and make no recommendation to the court concerning what sentence or fine to impose. Following a lengthy hearing held on June 24, 1983, the court accepted Suter's plea and entered a finding of guilt and judgment of conviction as to Counts 3 and 15. Several months later, following extensive plea negotiations between Suter and the government, Suter agreed to make restitution in

the amount of $67,830.34 to the victims of his coin brokerage scheme. However, one week before his scheduled sentencing on January 24, 1984, Suter filed a motion to withdraw his guilty plea. The government in response opposed the motion, and on January 24, 1984, after a hearing, the district court denied Suter leave to withdraw his plea, sentenced him to one year imprisonment on Count 3 and suspended imposition of sentence on Count 15, placing him on probation for a period of 5 years to run consecutively with the sentence in Count 3. As special conditions of probation, Suter was ordered to make restitution in the amount of $67,800 and not deal in coins. Suter appeals from his sentence and conviction.

Suter charges that the district court, in accepting his plea of guilty, failed to comply with the requirements of Fed.R. Crim.P. 11 in three aspects. Suter contends the record does not demonstrate that he understood the nature of the charges against him, that he was adequately instructed as to the consequences of his plea, and that a factual basis for the plea was established. On a direct appeal of a conviction arising from a guilty plea, any noncompliance with Rule 11 requires reversal. *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam). Suter's bald assertions to the contrary notwithstanding, the record of the plea hearing amply demonstrates that Suter understood the nature of the charges he faced and that a factual basis existed for his plea. Suter was represented by counsel and impressed the court as "a person of superior understanding and intelligence." The written plea agreement, which Suter acknowledged he had read and signed, set out in great detail the overall scheme to defraud, involving use of the mail, and the particular facts of Counts 3 and 15 of the indictment. Moreover, both Counts 3 and 15 were meticulously described, explained and admitted to by Suter during his plea hearing. The letters which gave rise to Counts 3 and 15 were produced. After examining them, Suter acknowledged having authorized both their drafting and mailing, and admitted to the court

that "there was a scheme to defraud people by taking their money and not delivering coins or refunds." Expressing surprise that his mail fraud conviction led to the imposition of treble damages in a related civil action, Suter also contends the district court failed to adequately inform him of the consequences of his guilty plea. Suter misconstrues Rule 11. A defendant is entitled to be informed of the direct, not all the collateral, consequences of his plea. *George v. Black*, 732 F.2d 108, 110 (8th Cir.1984). Compliance with this rule requires the sentencing court to explain to the defendant the definite, immediate and automatic consequences of his plea, *id.* at 110, and does not require a defendant be advised of the range of civil penalties or judgments he may face as a consequence of his plea. Holding that Suter's attack on the validity of his plea to be without merit, we turn to an examination of the correctness of the district court's denial of Suter's motion for leave to withdraw his plea.

Rule 32(d) of the Federal Rules of Criminal Procedure permits a defendant to withdraw a plea of guilty before sentence is imposed upon a showing to the court of "any fair and just reason." Whether the request will be granted or denied, however, " 'is within the sound discretion of the trial court and will not be reversed except upon an abuse of that discretion.' " *United States v. Thompson*, 680 F.2d 1145, 1151 (7th Cir.), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982), quoting, *United States v. Wright*, 407 F.2d 952, 954 (7th Cir.1969). The trial court's findings on this issue will be upheld unless "clearly erroneous." *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir.1977); *United States v. Fellus*, 573 F.Supp. 615, 618 (S.D. N.Y.1983). In concluding that Suter had failed to present any reason which would allow the withdrawal of his plea, the district court made the following findings, each of which we hold not to be clearly erroneous: a great deal of precious court time was spent on Suter's plea; it was entered by Suter with full knowledge of the facts, with fair warning of the conse-

quences, and with exhaustive reflection on the part of Suter and his counsel; the government has neither said or done anything which would constitute a sentence recommendation in breach of its plea agreement with Suter to make no recommendation; and Suter's present motion to withdraw his plea is obviously motivated by the civil consequences in the form of treble damages in related civil litigation. After apprising the court, during the course of a hearing held on October 21, 1983, of relevant factual information it possessed as to Suter's financial and business affairs and its potential impact on the restitution rights of the individuals Suter defrauded,[1] the government prosecutor went on to point out various sentencing alternatives the court could impose in protecting the victims. In doing so, however, the government expressed no position as to what sentence should be imposed. Rather, the government's comments were motivated by its responsibility [2] to the victims of Suter's fraudulent scheme. Consistent with this responsibility and in fulfillment of its promises under the plea agreement, the prosecutor properly limited [3] her statements to an exploration of the range of sentencing options available to the court which would enhance Suter's payment of restitution. We find the comments were an adjunct to, and in compliance with, the court's request for the parties to work out an agreement on restitution, and not tantamount, as Suter contends, to a sentence recommendation by the government. Given the great care with which Suter's plea was accepted, in addition to the lapse of almost seven months from the time the plea was entered to his motion for withdrawal, Suter's conclusory reassertion of innocence falls far short of the "fair and just" standard of Fed.R.Crim.P. 32(d). *United States v. Henry,* 459 F.Supp. 199, 200 (S.D.N.Y. 1978). Unconvinced by Suter's renewed claim of innocence, the district court at the plea withdrawal hearing determined that Suter was motivated in his request by collateral civil consequences to the plea, a reason insufficient, in the district court's opinion, to justify withdrawal of the plea: "If people are allowed to withdraw pleas for reasons as slim as those advanced here [by Suter], then the process of accepting guilty pleas would simply be a means of continuing the trial to some indefinite date in the future when the defendant might see fit to come in and make a motion to withdraw his plea." *Accord, United States v. Thompson,* 680 F.2d at 1150. We find the district court properly exercised its discretion in the denial of Suter's motion to withdraw his plea. Failing to advance a "fair and just reason" for withdrawal of his plea, Suter was not entitled to an evidentiary hearing on the motion. *United States v. Thompson,* 680 F.2d at 1152.

■ Suter next challenges the imposition of a condition of his probation requiring him to make restitution in an amount greater than involved in the particular counts for which he was convicted. He also complains that the amount of restitution ordered far exceeded the total monetary losses specified in the 23-count indictment. Restitution, as a condition of probation, is authorized "for actual damages or

---

1. As part of its plea agreement with Suter, the government explicitly reserved the right to "fully apprise the District Court ... of the nature, scope and extent of [Suter's] conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing."

2. The Attorney General's Guidelines for Victim and Witness Assistance, promulgated on July 9, 1983, pursuant to the Victim and Witness Protection Act of 1982, Pub.L. 97–291, October 12, 1982, 96 Stat. 1248, provides in relevant part:
 Consistent with available resources and their other responsibilities, federal prosecutors should advocate fully the rights of victims on the issue of restitution unless such advocacy would unduly prolong or complicate the sentencing proceeding.
 33 BNA Criminal Law Reporter 3329, 3331 (August 3, 1983); 48 Federal Register 33,774, 33,777 (July 25, 1983).

3. The transcript of the October 21 hearing demonstrates that on more than one occasion the prosecutor, in addressing the district court, prefaced her comments by explicitly stating that she was not making a recommendation as to what sentence the court should impose, and that her remarks should not be interpreted as such.

loss caused by the offense for which conviction was had...." 18 U.S.C. § 3651. This court has construed § 3651 as allowing a court to require restitution of any amount up to the entire illicit gain from an ongoing scheme to defraud if the amount has been established with specificity and agreed to by the defendant. *United States v. Davies*, 683 F.2d 1052, 1054 (7th Cir. 1982). In the present case, the record indicates the plea agreement was modified to require that Suter make restitution in specified amounts to named individuals who were defrauded as a result of Suter's coin brokerage scheme as set forth in a document entitled "Agreed Restitution of Undisputed Claims," signed by Suter and filed with the court on October 21, 1983. Although the 23-count indictment set forth the claimed monetary loss of only four of Suter's victims, totalling $23,925.10, the negotiations that took place between Suter and the government as to restitution properly included the claims of all individuals known to the government to have been defrauded by Suter's coin brokerage scheme. The record demonstrates that Suter fully bargained for,[4] and explicitly consented to, restitution, not only in an amount greater than the counts of which he was convicted, but also in excess of the total amount specified in the entire 23-count indictment. Under these circumstances, the sentencing court is bound by law to impose the agreed upon restitution as a condition of probation. *Phillips v. United States*, 679 F.2d 192, 194 (9th Cir. 1982). Suter cannot now complain.

 Lastly, we address two remaining arguments raised by Suter. Suter claims the district court abused its discretion in denying an evidentiary hearing on his motion to dismiss the indictment for selective prosecution. This court need not reach this issue, however, since Suter failed to pre-

serve the issue for appellate review by not complying with the requirements of entering a "conditional plea." Fed.R.Crim.P. 11(a)(2). In his reply brief, Suter asserts for the first time a claim of double jeopardy. Issues raised for the first time in a reply brief are normally not considered on appeal. *United States v. Haldeman*, 559 F.2d 31, 78 n. 113 (D.C.Cir.1976), citing *Finsky v. Union Carbide & Carbon Corp.*, 249 F.2d 449, 459 (7th Cir.1957), *cert. denied*, 356 U.S. 957, 78 S.Ct. 993, 2 L.Ed.2d 1065 (1958). In any event, Suter has not been placed in jeopardy twice merely because he faces judgments or penalties in civil lawsuits or administrative actions based on the same fraudulent scheme for which he stands convicted in federal district court. *See, e.g., United States v. Hall*, 559 F.2d 1160, 1163 (9th Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1523, 55 L.Ed.2d 539 (1978); *United States v. Barger*, 458 F.2d 396 (9th Cir.1972) (per curiam); *United States v. Countryside Farms, Inc.*, 428 F.Supp. 1150, 1159 (D.Utah 1977).

Accordingly, we conclude that the district court fully adhered to Rule 11, and did not abuse its discretion in denying Suter's motion for leave to withdraw his guilty plea and in ordering restitution in the amount of $67,800.[5] The conviction and sentence of the district court are AFFIRMED.

---

4. The record indicates that the district court requested Suter, his counsel and the government to attempt to work out a reasonable amount of restitution to the victims of Suter's fraudulent scheme before the court imposed sentence. Transcript, Hearing of September 8, 1983, p. 2.

5. We find Suter's conclusory claim that the mail fraud statute, 18 U.S.C. § 1341, is unconstitutional clearly without merit, and not warranting discussion. *United States v. Feinberg*, 535 F.2d 1004, 1010 (7th Cir.), *cert. denied*, 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976) (§ 1341 not unconstitutionally vague).